IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| IN RE: KENNETH RAY SMOOT,<br><br>            Debtor.<br><br>LANCE E. RUCK, el al.,<br><br>            Appellants,<br><br>       v.<br><br>LYNN LEWIS TAVENNER,<br><br>         Trustee and Appellee. | Civil Action Number 3:05CV482-JRS |

## **MEMORANDUM OPINION**

THIS MATTER comes before the Court on appeal from the United States Bankruptcy Court for the Eastern District of Virginia. Lance E. Ruck, Robert A. Cushing, Jr., and Kenneth R. Smoot[1] (the "Debtor") (collectively the "Appellants"), proceeding pro se, are appealing the Bankruptcy Court's Order of May 19, 2005, denying their separate motions for certain administrative expenses which they allegedly accrued for the purpose of benefitting the Debtor's bankruptcy estate (the "estate").

Appellee Lynn L. Tavenner (the "Appellee" or the "Trustee") had originally requested an opportunity to present oral argument, but Appellants argued that under Federal Rule of Bankruptcy Procedure 8012(3), oral argument is unnecessary, because "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly

---

[1] In their Reply Brief, Appellants concede that Smoot, the Debtor, "by law . . . is not entitled to any administrative expenses." Appellants' Reply Br. 9. Accordingly, the Court will not discuss the appeal as it applies to the Debtor.

aided by oral argument." Fed. R. Bankr. P. 8012(3). Appellee has since indicated that she has no objection to proceeding without oral argument to decide the issues that are raised on appeal. Because the Court finds that the facts and legal arguments are sufficiently clear based upon the briefs and the record of this case, the Court can properly resolve this appeal without hearing oral arguments. For the reasons stated, the Bankruptcy Court's decision will be affirmed.

## I.   BACKGROUND

### A.   Relevant Facts[2]

In the mid-1990s, while employed as a locomotive engineer for CSX Transportation ("CSX"), the Debtor was physically injured in a work-related incident when the floor of a locomotive engine collapsed beneath him. In June 1998, for a settlement of $250,000.00, the Debtor released his personal injury claims against CSX. After the Debtor used a portion of this amount to pay off outstanding debts, a sum of $217,059.25 was deposited into a bank account at the CanDo Credit Union in Ohio. This account was held by the Debtor and his wife, Katina Smoot, as joint tenants with rights of survivorship. On the same date, the Debtor transferred (by wire) $210,000.00 from the jointly held bank account to Glass Apple, Inc., a closely held corporation owned by his wife, son, and daughter. The Debtor then, between June 9, 1998, and October 26, 1998, drew $196,516.70 in checks from the Glass Apple, Inc. account, including payments for automobiles for his wife, son, and daughter.

In a separate case on March 30, 1998, the Debtor was found liable for violations of the Federal Wiretapping Act, arising out of an incident when he tape recorded a meeting between CSX and the United Transportation Union ("UTU") (the "wiretap case"). The purpose of the meeting was to discuss the Debtor's grievances against CSX and UTU, stemming from a labor agreement. On August 7, 1998,

---

[2] This factual background is derived from the Bankruptcy Court's factual findings, as well as a fair reading of the record on appeal.

the United States District Court for the Northern District of Ohio entered judgment against Debtor and in favor of CSX for $170,000.00, in favor of UTU for $180,000.00, and for an additional $25,000.00 in attorneys' fees (the "wiretap judgment").

On December 11, 1998, UTU filed suit against the Debtor in the Circuit Court for the County of Chesterfield, Virginia. UTU sought to set aside a number of transfers of money as fraudulent, and to have those assets made available for satisfaction of the wiretap judgment. The circuit court issued a writ of attachment on the specified property.

**B.  Relevant Procedural History**

On December 23, 1998, the Debtor filed a Chapter 7 bankruptcy petition. Appellee Tavenner was appointed as the Chapter 7 Trustee on December 30, 1998. The Trustee initiated an adversary proceeding on January 19, 1999, and the United States Bankruptcy Court for the Eastern District of Virginia avoided the Debtor's transfers of cash prior to his Chapter 7 petition, and also disallowed the Debtor's claimed exemption for the personal injury recovery. The Bankruptcy Court also denied the Debtor's discharge in bankruptcy pursuant to Bankruptcy Code § 727(a)(2)(A). In re Smoot, 265 B.R. 128 (Bankr. E.D. Va. 1999), aff'd, 257 F.3d 401 (4th Cir. 2001), cert. denied, 534 U.S. 1116 (2002).

While the bankruptcy case was pending, the Debtor spent $10,000.00 of his own money, and Appellant Ruck provided the Debtor with an additional $5,100.00 so that he could appeal the judgment against him in the wiretap case. Appellant Cushing also provided the Debtor with $10,000.00 for the purpose of initiating a legal malpractice suit against his former counsel in the wiretap case. In March 2005, Appellants filed separate motions seeking to recover these amounts as administrative expenses that benefitted the estate. In a Memorandum Opinion and Order dated May 19, 2005, Chief Judge Douglas Tice of the Bankruptcy Court denied the three Motions for Administrative Expenses. Appellants now seek

review of the Bankruptcy Court's denial of their Motions.

## II.   ANALYSIS

**A.   Bankruptcy Court's Decision**

In considering Appellants' separate Motions for Administrative Expenses, the Bankruptcy Court agreed with the Trustee that Appellants did not prove that the Trustee had requested Ruck and Cushing to loan money to the bankruptcy estate, nor did they establish that their actions served to benefit the estate, rather than benefit only the Debtor.  The Bankruptcy Court observed that the applicable Bankruptcy Code provision allowing for the payment of administrative expenses out of the estate must be "'narrowly construed.'"  Mem. Op. and Order 3 (quoting Devan v. Simon Debartolo Group, L.P. (In re Merry-Go-Round Enters., Inc.), 180 F.3d 149, 157 (4th Cir. 1999) (referring to 11 U.S.C. § 503(b)(1) (2000))).  The relevant provision, Bankruptcy Code § 503(b)(1), explains that administrative expenses may be allowed for "the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1) (2000).  In interpreting the phrase, "actual, necessary costs and expenses of preserving the estate," the Bankruptcy Court cited Fourth Circuit case law holding that such an expense is one: 1) that arises from a post-petition transaction between the party claiming the administrative expense and the trustee, and 2) in which the party seeking the allowance of the administrative expense has provided consideration benefitting the bankruptcy estate.  Mem. Op. and Order 3 (citing Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.), 64 F.3d 141, 145 n.2 (4th Cir. 1995)).  As the Bankruptcy Court reasoned, the costs for which Appellants seek reimbursement as administrative expenses do not meet these two requirements.

The Bankruptcy Court further noted that the Bankruptcy Code "simply does not allow a debtor to engage in litigation, at estate expense, that has not been approved by the trustee."  Mem. Op. and Order 3.  The Bankruptcy Court explained that, "[b]ecause [the] [D]ebtor's malpractice claim was clearly an asset

of the estate, it was solely within the [T]rustee's province to recover any damages." Id. at 4. Finally, the Bankruptcy Court offered as additional justification for denying the three Motions the fact that the Debtor resisted the Trustee's efforts to administer the estate's malpractice claim, leading the Trustee to initiate an adversary proceeding to gain her rightful control of the claim.

**B.   Standard of Review**

On appeal, this Court cannot set aside the Bankruptcy Court's findings of fact unless they are clearly erroneous. See Fed. R. Bankr. P. 8013. When applying the clearly erroneous standard of review, "findings of fact will be affirmed unless [the appellate court's] review of the entire record leaves [it] with the definite and firm conviction that a mistake has been committed." Harman v. Levin, 772 F.2d 1150, 1153 (4th Cir. 1985). The Bankruptcy Court's conclusions of law, however, must be reviewed de novo. Addison v. Reavis, 158 B.R. 53, 55 (E.D. Va. 1993).

The only clear factual error this Court finds is the Bankruptcy Court's characterization of Cushing's $10,000.00 as supportive of the Debtor's "medical" malpractice claim. Upon reviewing the record and the parties' briefs on appeal, it appears certain that the money Cushing provided helped to pay for the commencement of a *legal* malpractice suit against the Debtor's former attorney. This oversight, however, is inconsequential for the purposes of this appeal, despite Appellants' representations to the contrary. The arguments raised by the parties construe straightforward issues of law. As such, the Court will limit its discussion to the Bankruptcy Court's conclusions of law.

**C.   Parties' Arguments on Appeal**

    **1.   *Appellants' Arguments***

In a thirty-five-page brief denouncing their treatment by the Bankruptcy Court and suggesting this Court's predisposition to ignore facts and rule against them by virtue of their pro se status, Appellants

attempt to articulate several overlapping issues and corresponding arguments.[3] Appellants first argue that the Court should grant a <u>nunc pro tunc</u> order retroactively approving their unauthorized applications for administrative expenses. Appellants believe that the Court should find that exceptional circumstances exist and depart from the general rule that a creditor must seek prior approval from the court or the trustee before claiming administrative expenses.

Appellants represent the exceptional circumstances to be based on their assertion that it was "evident" that the Trustee was not going to take actions to preserve the estate. Appellants allege that the Trustee had a "conflict of interest" and abused the automatic stay process by working toward staying legal actions by the Debtor, rather than those against him. In essence, Appellants believe that the Trustee was trying to keep the Debtor from filing lawsuits, even though she knew that the suits could benefit the bankruptcy estate. Therefore, Appellants argue that interested parties were permitted to pay what should now be deemed administrative expenses.

Finally, Appellants point to the ways in which their administrative expenses, as they contend, "directly and substantially benefitted the estate." Appellants' Br. 34. In addition to characterizing the alleged reduction in the wiretap judgment as a benefit to the estate, they also state that if the Debtor pursued the malpractice case to trial, he could receive a substantial sum of money. This money would benefit the estate, they argue, by providing extra funds that could aid smaller creditors in case there were not sufficient funds to pay all creditors.

---

[3] Appellants list four issues on appeal: "**1)** Is prior approval from a Trustee the only method of approving administrative fees or may they also be approved nunc pro tunc because of exceptional or unusual circumstances?; **2)** May Trustee [sic] conflict of interest and deliberate misrepresentation of fact and law constitute unusual circumstances; **3)** May parties of interest pay administrative expenses if it is evident the Trustee intends to take no actions to preserve the estate?; [and] **4)** Should the parties of interest be reimbursed their administrative expenses when it is evident the expenses directly and substantially benefitted the estate?" Appellants' Br. 2.

**2.**   *Appellee's Arguments*

Applying the same logic as the Bankruptcy Court, Appellee argues that Appellants' Motions for Administrative Expenses fail for three reasons: 1) the costs incurred by Appellants were not transactions with the Trustee; 2) the costs were not actual, necessary expenses of preserving the estate; and 3) the estate did not receive an actual benefit from the claimed expenses.  In response to Appellants' request for entry of a nunc pro tunc order granting their Motions for Administrative Expenses, Appellee contends that Appellants have not sufficiently demonstrated the requisite exceptional circumstances to warrant such an action by this Court.

**D.   Discussion**

The Bankruptcy Court's conclusions of law were correctly guided by the applicable Bankruptcy Code provisions and relevant Fourth Circuit case law authority.  As the Bankruptcy Court clearly explained, the relevant Bankruptcy Code provision explains that administrative expenses may be allowed for "the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1) (2000).  The Fourth Circuit has held that "actual, necessary costs and expenses of preserving the estate" are costs: 1) that arise from a post-petition transaction between the party claiming the administrative expense and the trustee, and 2) in which the party seeking the allowance of the administrative expense has provided consideration benefitting the bankruptcy estate.  See Devan v. Simon Debartolo Group, L.P. (In re Merry-Go-Round Enters., Inc.), 180 F.3d 149, 157 (4th Cir. 1999); Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.), 64 F.3d 141, 145 n.2 (4th Cir. 1995).  It is important to note the Fourth Circuit's recognition that the Bankruptcy Code provision allowing for the payment of administrative expenses out of the estate must be "narrowly construed."  Devan v. Simon Debartolo Group, L.P. (In re Merry-Go-Round Enters., Inc.), 180 F.3d 149, 157 (4th Cir. 1999) (referring to 11

U.S.C. § 503(b)(1) (2000)).  Furthermore, "the modifiers 'actual' and 'necessary' must be observed with scrupulous care."  Id. (internal quotations and citation omitted).

The first requirement for an expense to qualify as administrative is that the claimed expense must arise from a transaction with the Trustee.  It is undisputed that Appellants Ruck's and Cushing's Motions for Administrative Expenses seek repayment for expenses associated with transactions *not* involving the Trustee.  Therefore, the requirement for qualifying as an "actual, necessary cost and expense" is not satisfied, and Appellants' Motions fail.

Although unnecessary, an analysis of the second requirement—that the claimed expense went toward providing a benefit to the bankruptcy estate—reveals that Appellants' Motions could be denied on this basis, as well.  With respect to Appellant Ruck's Motion, Appellants explain that the claimed expenses helped fund the Debtor's appeal of the judgment against him in the wiretap case to the Sixth Circuit, allegedly resulting in a reduction of approximately $200,000.00 to the judgment amount.  Ultimately, though, because the Debtor was personally liable for the wiretap judgment against him, the benefit to the estate of any reduction in the judgment has arguably not been established.  See Haskins v. United States (In re Lister), 846 F.2d 55, 57 (10th Cir. 1988) ("Efforts undertaken by a creditor solely to further his own self-interest . . . will not be compensable, notwithstanding any incidental benefit accruing to the bankruptcy estate.").

Turning to the manner in which Appellant Cushing's loan allegedly benefitted the estate, Appellants try to make their point by stating that "no one wants to imagine the perceived benefit to the estate if Smoot were to slam dunk Merritt Green, III for the limit of his malpractice insurance, least of all . . . the Trustee."  Appellants' Reply Br. 9.  This statement does very little to support Appellants' argument on this point.  See, e.g., Broadcast Corp. of Georgia v. Broadfoot (In re Subscription

Television of Greater Atlanta), 789 F.2d 1530, 1532 (11th Cir. 1986) ("That which is thought to have some potential benefit . . . may be a benefit but is too speculative to be allowed as an 'actual, necessary cost and expense of preserving the estate.'"). The Trustee was not obligated to speculate and "imagine" what benefit might come from the Debtor's malpractice case. It was within her discretion as the Trustee to seek damages and authorize those litigation expenses. As the Bankruptcy Court observed, "it was solely within the [T]rustee's province to recover any damages." Mem. Op. and Order 4. Appellants cannot circumvent the Trustee's authority and later seek reimbursement for their unapproved litigation endeavors. This was a risk they chose to take. This Court is not in any way compelled to reverse the Bankruptcy Court's reasonable decision to deny Appellants' Motions for Administrative Expenses on the grounds proffered by Appellants.

As an alternative argument, Appellants contend that this Court should use its discretion to retroactively grant the Motions for Administrative Expenses nunc pro tunc as an exception to the general rule requiring creditors to obtain prior approval from a court or the trustee before claiming costs as administrative expenses under 11 U.S.C. § 503(b). Unfortunately, the Fourth Circuit has been relatively silent on this issue. The Second Circuit, however, was somewhat of a pioneer in crafting modern jurisprudence on the concept of nunc pro tunc approval of post-petition financing, shedding light on the appropriate circumstances for invoking this equitable exception to the general rule. Over sixty years ago, the Second Circuit explained that this power should be "cautiously exercised" and that "only a foolhardy lender will attempt to make it serve as a substitute for the proper authorization." In re Am. Cooler, 125 F.2d 496, 497 (2d Cir. 1942). More recently, the Second Circuit made clear that such retroactive authorization of administrative expenses "should only be granted in unusual circumstances." Photo Promotion Assocs., Inc. v. C.P.Q. Colorchrome Corp. (In re Photo Promotion

Assocs., Inc.) 881 F.2d 6, 9 (2d Cir. 1989).

Overall, the resounding judicial consensus seems to be that incurred costs may be viewed as compensable administrative expenses when they are "of an extraordinary nature as necessitated by the[] special circumstances and result[] in a direct or demonstrable benefit to the estate[]." See, e.g., In re Kidron, Inc., 278 B.R. 626, 634 (M.D. Fla. 2002) (granting, in the context of 11 U.S.C. § 503(b)(3)(D), administrative expense payment priority to a creditor company that incurred certain costs as a potential purchaser of the assets of the debtors). Appellants have not established the existence of unique or exceptional circumstances that would justify this Court in issuing a nunc pro tunc Order granting their Motions for Administrative Expenses. Appellants' argument that the Trustee has a "conflict of interest" does not suffice; the record does not support that assertion.

### III. CONCLUSION

Appellants have not met the statutory requirements, as interpreted through relevant case law, for proving their entitlement to compensation for administrative expenses. Accordingly, the Court is convinced that the Bankruptcy Court properly denied Appellants' Motions for Administrative Expenses. The Bankruptcy Court's decision is AFFIRMED.

An appropriate Order shall issue.

/s/
James R. Spencer
CHIEF UNITED STATES DISTRICT JUDGE

ENTERED this  29th  day of March 2006